**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**NATALIE PILKINTON,**

   **Plaintiff,**

                                                          **CASE NO.:**

**v.**

**HEALTH AND PSYCHIATRIST**
**CONSULTANTS, LLC**

   **Defendants.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, NATALIE PILKINTON ("Plaintiff"), by and through undersigned counsel, hereby sues Defendant, HEALTH AND PSYCHIATRIST CONSULTANTS, LLC ("Defendant"), and in support of her claims states as follows:

## JURISDICTION AND VENUE

1.     This is an action for damages for violations of the Florida Private Whistleblower's Act ("FPWA"), Section 448.102 Fla. Stat. and the Fair Labor Standards Act, 29 U.S.C. § 206 *et seq*. for retaliation.

2.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and § 201 *et seq*. This Court also has pendent jurisdiction over the state law claims.

3.     Venue is proper in this District, because all of the events giving rise to these claims occurred in Pinellas County, which is in this District.

**PARTIES**

4.      Plaintiff is a resident of Pasco County, Florida.

5.      Defendant operates a healthcare services company in Pinellas County, Florida.

**GENERAL ALLEGATIONS**

6.      At all times material hereto, Plaintiff was an "employee" of Defendant within the meaning of the FPWA, Section 448.101(2), Fla. Stat.

7.      At all times material hereto, Defendant was an "employer" within the meaning of the FPWA, Section 448.101(3), Fla. Stat.

8.      At all times material hereto, certain individuals working for Defendant were "employees" of Defendant within the meaning of the FLSA.

9.      At all times material hereto, Defendant was an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d).

10.      Defendant continues to be an "employer" within the meaning of the FLSA.

11.      At all times material hereto, Defendant was and continues to be an enterprise covered by the FLSA, as defined under 29 U.S.C. §§ 203(r) and 203(s).

12.      At all times relevant to this action, Defendant engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 203(s).

13.      At all times relevant to this action, the annual gross sales volume of Defendant exceeded $500,000 per year.

2

14. Specifically, many of Defendant's employees were not employed by Defendant in a bona fide administrative, executive, or professional capacity. In particular, many of Defendant's employees had no authority to hire or terminate any other employee of Defendant; they had no special or professional qualifications and skills for the explicit use of which they were employed by Defendant; and they had no control whatsoever over Defendant's business operations, even from an administrative standpoint.

15. Thus, many of Defendant's employees are "non-exempt employees" who are covered by the FLSA.

16. At all times material hereto, the work performed by many of Defendant's employees was directly essential to the business performed by Defendant.

17. Plaintiff has satisfied all conditions precedent, or they have been waived.

18. Plaintiff has hired the undersigned attorneys and agreed to pay them a fee.

19. Plaintiff requests a jury trial for all issues so triable.

## **FACTS**

20. Plaintiff began working for Defendant as a Billing Manager in or around December 2023, and she worked in this capacity until on or around February 23, 2024.

21. At all times material hereto, Defendant was a medical facility.

3

22.    Defendant had a duty to adhere to Florida and Federal law, but breached this duty in numerous ways.

### *Lack of Supervising Physician*

23.    Defendant had a duty to ensure that its employees—particularly, its Nurse Practitioners, who were practicing medicine—were properly supervised by physicians, pursuant to Section 464.012(3), Florida Statutes, which provides, in relevant part:

> In the case of multiple supervising physicians in the same group, **an advanced practice registered nurse must enter into a supervisory protocol with at least one physician** within the physician group practice. **A practitioner currently licensed under chapter 458, chapter 459, or chapter 466 shall maintain supervision for directing the specific course of medical treatment**.

24.    In or around late-2023/early-2024, Plaintiff noticed that one of Defendant's Nurse Practitioners was practicing medicine without a supervising physician, which was unlawful.

25.    Alternatively, in or around late-2023/early-2024, Plaintiff noticed that one of Defendant's Nurse Practitioners was practicing medicine without a supervising physician, which she, in good faith, reasonably believed to be unlawful.

26.    In or around early January 2024, Plaintiff spoke to Usman Ezad, Defendant's CEO, to object to Defendant permitting one of its Nurse

4

Practitioners to practice medicine in Georgia, without the supervision of a physician, which was unlawful.

27. Alternatively, in or around early January 2024, Plaintiff spoke to Usman to object to Defendant permitting one of its Nurse Practitioners to practice medicine in Georgia, without the supervision of a physician, which Plaintiff, in good faith, reasonably believed to be unlawful.

### ***Unlawful Billing Practices***

28. Additionally, Defendant had a duty to ensure that its employees and agents adhered to Section 817.234, Florida Statutes, entitled "False and Fraudulent Insurance Claims," which states, in relevant part:

(1)(a) A person commits insurance fraud punishable as provided in subsection (11) if that person, with the intent to injury, defraud, or deceive any insurer:

1. Presents or causes to be presented any written or oral statement as part of, or in support of, a claim for payment or other benefit pursuant to an insurance policy or a health maintenance organization subscriber or provider contract, knowing that such statement contains any false, incomplete, or misleading information concerning any fact or thing material to such claim;

2. Prepares or makes any written or oral statement that is intended to be presented to any insurer in connection with, or in support of, any claim for payment or other benefit pursuant to an insurance policy or a health maintenance organization subscriber or provider contract, knowing that such statement contains any false, incomplete, or misleading information concerning any fact or thing material to such claim;

3.a. Knowingly presents, causes to be presented, or prepares or makes with knowledge or belief that it will be presented to any insurer, purported insurer, servicing corporation, insurance broker, or insurance agent, or any employee or agent thereof, any false,

incomplete, or misleading information or written or oral statement as part of, or in support of, an application for the issuance of, or the rating of, any insurance policy, or a health maintenance organization subscriber or provider contract . . . .

29.   Further, Defendant had a duty to ensure that its employees and agents adhered to 31 U.S.C. § 3729-3733, entitled "False Claims," which provides that it is unlawful to knowingly present[], or cause[] to be presented, a false of fraudulent claim for payment or approval . . . ."

30.   In or around late-2023/early-2024, Plaintiff noticed that another employee, Alyssa (not a physician) was forcing the physician's signature on paperwork, including paperwork which would be used for medical insurance claims, which could include Medicare and/or Medicaid claims.

31.   Accordingly, the insurance claims submitted with falsified documents would constitute a violation of Section 817.234, Florida Statutes and 31 U.S.C. § 3729-3733.

32.   In the alternative, Plaintiff had a good faith, reasonable belief that the insurance claims submitted with falsified documents would constitute a violation of Section 817.234, Florida Statutes and 31 U.S.C. § 3729-3733.

33.   Moreover, the Medicare and/or Medicaid claims submitted with falsified documents would constitute a violation of 31 U.S.C. § 3729-3733.

34.   In the alternative, Plaintiff had a good faith, reasonable belief that the Medicare and/or Medicaid claims submitted with falsified documents would constitute a violation of 31 U.S.C. § 3729-3733.

6

35.     In or around early January 2024, Plaintiff objected to these unlawful billing practices by complaining to Usman about them.

36.     Alternatively, in or around early January 2024, Plaintiff objected to what she, in good faith, reasonably believed to be unlawful billing practices, by complaining to Usman about them.

### *Fair Labor Standards Act*

37.     At various times material hereto, employees of Defendant worked hours in excess of forty (40) hours within a work week for Defendant, and they were entitled to be paid an overtime premium equal to one and one-half times their regularly hourly rate for all of these hours, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*

38.     These employees were not exempt from the FLSA overtime requirements.

39.     However, Defendant failed to pay these certain employees an overtime premium for all of their overtime hours, in violation of the FLSA.

40.     In the alternative, Plaintiff reasonably, in good faith, believed that Defendant's failure to pay these certain employees an overtime premium for all of their overtime hours constituted a violation of the FLSA.

41.     In or around late-January 2024, Plaintiff complained to Usman about Defendant's violation of the FLSA, by failing to compensate several other covered employees at an overtime premium for work that these employees had performed in excess of forty hours per week.

42.     In the alternative, in or around late-January 2024, Plaintiff complained to Usman about what Plaintiff reasonably, in good faith, believed to be Defendant's violation of the FLSA, by failing to compensate several other covered employees at an overtime premium for work that these employees had performed in excess of forty hours per week.

43.     Plaintiff emphasized to Usman the unlawfulness of Defendant's failure to properly compensate these employees at an overtime premium for overtime work and suggested that they might complain to the Department of Justice regarding Defendant's FLSA violations.

### *Patient Confidentiality*

### *Physical Records*

44.     As a medical practice handling confidential patient information, Defendant had an obligation to adhere to 45 CFR § 164.530(c)(1) (45 CFR Part 164 is generally referred to hereinafter as "HIPPA"), which states, in relevant part:

> A covered entity must have in place appropriate administrative, technical, and **physical safeguards** to protect the privacy of protected health information.

(Emphasis added).

45.     In the alternative, Plaintiff reasonably, in good faith, believed that Defendant had an obligation to adhere to 45 CFR § 164.530(c).

8

46.     Additionally, as a medical practice handling confidential patient information, Defendant had an obligation to adhere to Section 456.057(10), Florida Statutes, which provides:

> All records owners shall develop and implement policies, standards, and procedures to protect the confidentiality and security of the medical record. Employees of records owners shall be trained in these policies, standards, and procedures.

47.     In the alternative, Plaintiff reasonably, in good faith, believed that Defendant had an obligation to adhere to Section 456.057(10), Florida Statutes.

48.     In or around early February 2024, Plaintiff noticed that Defendant's file cabinet, containing sensitive and confidential patient files, does not lock.

49.     Around this time, after Plaintiff discovered this issue, she informed Defendant about it and objected to the fact that this was an unlawful mishandling of confidential patient information, including a HIPPA violation, due to the lack of a physical safeguard.

50.     In the alternative, Plaintiff informed Defendant about the lack of lock on the file cabinet and objected to the fact that this was what Plaintiff, reasonably and in good faith, believed to be an unlawful mishandling of confidential patient information, including a HIPPA violation, due to the lack of a physical safeguard.

### *Electronic Records*

51.    As a medical practice handling confidential patient information, Defendant had an obligation to adhere to 45 CFR § 164.308, which states, in relevant part:

> **(a)** A covered entity or business associate must . . . :
>
> > **(i) *Standard: Security management process.*** Implement policies and procedures to prevent, detect, contain, and correct security violations.
> >
> > **(ii) *Implementation specifications:***
> >
> > > **(A)      *Risk analysis (Required).*** Conduct an accurate and thorough assessment of the potential risks and vulnerabilities to the confidentiality . . . of electronic protected health information held by the covered entity . . .
> > >
> > > **(B)      *Risk management (Required).*** Implement security measures sufficient to reduce risks and vulnerabilities to a reasonable and appropriate level to comply with § 164.306(a).

(Emphasis in original).

52.    On or around February 5, 2024, Plaintiff complained to the company that provides Defendant with Information Technologies services, of electronic security breaches that compromised patient confidentiality, which was a violation of 45 CFR § 164.308 and of HIPPA, generally.

53.    Alternatively, on or around February 5, 2024, Plaintiff complained to the company that provides Defendant with Information Technologies services, of electronic security breaches that compromised patient confidentiality, which

Plaintiff reasonably, in good faith, believed to be a violation of 45 CFR § 164.308 and of HIPPA, generally.

### *Forgery With Notary Stamp*

54.   Defendant had a duty to ensure that its employees and agents adhered to Section 831.01, Florida Statutes, entitled "Forgery," which states, in relevant part:

> Whoever falsely makes, alters, **forges or counterfeits a** public record, or a certificate, return or **attestation of any . . . notary public** . . . in relation to a matter wherein such certificate, return or attestation may be received as a legal proof; or a charter, deed, will, testament, bond, or writing obligatory, letter of attorney, policy of insurance, bill of lading, bill of exchange or promissory note, or an order, acquittance, or discharge for money or other property, or an acceptance of a bill of exchange or promissory note for the payment of money, or any receipt for money, goods or other property, or any passage ticket, pass or other evidence of transportation issued by a common carrier, **with intent to** injure or **defraud any person, shall be guilty of a felony of the third degree**, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

(Emphasis added).

55.   Further, Defendant had a duty to ensure that its employees and agents adhered to Section 117.05, Florida Statutes, Entitled "Use of notary commission; unlawful use; notary fee; seal; duties; employer liability; name change; advertising; photocopies; penalties," and states, in relevant part:

> (1) **A person may not obtain or use a notary public commission in other than his or her legal name** . . . . Any person who violates this subsection commits a felony of the third degree . . . ."

11

(3). . . (b) The notary public official seal and certificate of notary public commission are the **exclusive property of the notary public** . . . ."

. . .

(d) Any person who **unlawfully possesses a notary public official seal** or any papers or copies relating to notarial acts is guilty of a misdemeanor of the second degree . . . .

(Emphasis added).

56. On or around February 22, 2024, Plaintiff found her notary stamp and signature on the copy machine in Defendant's office.

57. Plaintiff soon discovered that another employee, Alyssa, in the office had been using Plaintiff's notary and signature stamps to forge Plaintiff's signature on documents.

58. Plaintiff immediately objected to Alyssa's improper use of Plaintiff's notary stamp.

59. Plaintiff sent a text message to Usman, Defendant's CEO and the medical doctor for the practice, Dr. Sajan (Usman and Dr. Sajan are married), to inform them that Plaintiff needed to speak with them.

60. Dr. Sajan asked Plaintiff about the content of the meeting and Plaintiff informed her that it was for numerous reasons, one of them being forgery.

61. Plaintiff objected to Defendant's violations of Sections 831.01 and 117.05, Florida Statutes.

62.    Alternatively, Plaintiff objected to what she reasonable, in good faith, believed to be Defendant's violations of Sections 831.01 and 117.05, Florida Statutes.

63.    The very next day, on February 23, 2024, Defendant terminated Plaintiff as soon as Plaintiff arrived to work, but refused to provide Plaintiff with a reason for the termination.

64.    Defendant terminated Plaintiff in retaliation for Plaintiff engaging in protected activity by objecting to Defendant's numerous violations of Florida and Federal law, in violation of the FPWA and the FLSA.

## <u>COUNT I – RETALIATION UNDER THE FPWA</u>

65.    Plaintiff realleges and readopts the allegations of paragraphs 1 through 6 and 16 through 63 of this Complaint, as though fully set forth herein.

66.    On numerous occasions, Plaintiff opposed and refused to participate in Defendant's violation of Florida and Federal law, including reporting the violations to supervisors, thereby engaging in protected activity under the FPWA.

67.    Defendant retaliated against Plaintiff for engaging in protected activity under the FPWA by terminating Plaintiff's employment.

68.    Plaintiff was injured by Defendant's violations of the FPWA, for which she is entitled to legal and injunctive relief.

*WHEREFORE*, Plaintiff demands:

    a)    A jury trial on all issues so triable;

13

b)   That process issue and that this Court take jurisdiction over the case;

c)   Judgment against Defendant in the amount of Plaintiff's lost wages, benefits, and other remuneration;

d)   Any other compensatory damages allowable at law;

e)   All costs, attorney's fees, and reasonable expenses incurred in prosecuting these claims, in accordance with Fla. Stat. §448.104; and

f)   For such further relief as this Court deems just and equitable.

## COUNT II – FLSA RETALIATION

69.   Plaintiff realleges and readopts the allegations of paragraphs 1 through 4, 7 through 21, and 36 through 42 of this Complaint, as though fully set forth herein.

70.   During the statutory period, several of Defendant's employees worked overtime hours while employed by Defendant, and was not compensated for all of these hours in accordance with the FLSA.

71.   Plaintiff engaged in protected activity under the FLSA, by complaining to Defendant about Defendant's failure to compensate its employees for all wages owed to them.

72.   Shortly thereafter, Defendant terminated Plaintiff in retaliation for Plaintiff engaging in protected activity, in violation of the FLSA.

14

73.    The foregoing conduct, as alleged constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

74.    As a result of the foregoing, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff demands:

a)  Judgement against Defendant for an amount equal to Plaintiff's unpaid back wages;

b)  Judgment against Defendant stating that Defendant's violations of the FLSA were willful;

c)  A declaratory judgment that Defendant's practices as to Plaintiff were unlawful, and grant Plaintiff equitable relief;

d)  All costs and attorney's fees incurred in prosecuting these claims; and

e)  For such further relief as this Court deems just and equitable.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury as to all issues so triable.

Dated this 1st day of August, 2024.

Respectfully submitted,

*/s/ Brandon J. Hill*
**BRANDON J. HILL**
Florida Bar Number: 0037061
Direct Dial: 813-337-7992
**HANNAH E. DEBELLA**
Florida Bar Number: 1026002
**WENZEL FENTON CABASSA, P.A.**
1110 N. Florida Avenue, Suite 300
Tampa, Florida 33602

15

Main Number: 813-224-0431
Facsimile: 813-229-8712
Email: bhill@wfclaw.com
Email: hdebella@wfclaw.com
Email: aketelsen@wfclaw.com
**ATTORNEYS FOR PLAINTIFF**